UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

LARRY D. CARTER, JR.     )
     )
V.     )     NO. 2:08-CV-344
     )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security     )

## REPORT AND RECOMMENDATION

Plaintiff has judicially appealed the administrative denial of his applications for

disability insurance benefits and supplemental security income under the Social Security Act.

It is before the United States Magistrate Judge, pursuant to the standing orders of the Court

and 28 U.S.C. § 636, for a report and recommendation. Both the plaintiff and the defendant

Commissioner have filed Motions for Summary Judgment [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the

findings of the Secretary are supported by substantial evidence in the record. *McCormick*

*v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial

evidence" is defined as evidence that a reasonable mind might accept as adequate to support

the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough

to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought

to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607

(1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor

decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even

if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988).

Plaintiff was 26 years of age at the time of his claimed disability onset date on November 3, 2004. He was 28 years of age at the time the Administrative Law Judge ["ALJ"] rendered his decision. Plaintiff has past relevant work experience as an insulation installer, which was semi-skilled and heavy; an office clerk, which was semi-skilled and light; and as a cook, which was semi-skilled and medium. The plaintiff has a four-year college degree and was pursuing a second undergraduate degree at the time of the hearing decision. The plaintiff injured his back initially several years before his disability onset date while serving in the United States Marine Corps. He reported falling again and sustaining injury in September of 2003. Plaintiff has been a full-time college student since 2004.

The plaintiff recounts his medical history in his brief as follows:

> Plaintiff received treatment at the Mountain Home and Salem VAMC from July 29, 2002 through March 1, 2006. Conditions and complaints addressed during this time include history of lumbosacral spine injury with worsening lower extremity radiculopathy, neuropathy of the upper and lower extremities, history of chronic lumbar strain, chronic lower back pain radiating into the lower extremities, panic attacks, paroxysmal dyspnea, long history of weakness and diaphoresis, insomnia, cecal fracture at L5, fracture of the sacrum and coccyx, lightheadedness, palpitations, phobia of closed areas, anxiousness, anxiety disorder, depression, claustrophobia, excessive worry, allergic rhinitis, degenerative disc disease of the lumbar spine, left hand pain and decreased strength, neck pain with upper extremity radiculopathy and sensory deficit, cervical and lumbar muscle spasms, decreased cervical and lumbar range of motion, left arm and hand numbness, sacroiliac joint fixation, sacral rotation, lumbar subluxation, right thigh pain, and back giving out (Tr. 157-306).

> On March 24, 2004, lumbar spine x-rays showed a fracture at the distal sacrum near the tip; a fracture of the junction of the sacrum and coccyx; degenerative changes of both hips, right greater than left, with narrowing of the hip compartment; and disc space narrowing at the L4-L5 level (Tr. 293). Plaintiff presented to the ER on June 13, 2004, with an established history of panic attacks and complaints of having suffered another panic attack which was comprised of having sweating palms, feeling queasy in his stomach, palpitations, and difficulty breathing. Plaintiff had been feeling very claustrophobic in the sense that he become uncomfortable in enclosed spaces like elevators or cars; he had become very jittery, feeling very frustrated, and had been

2

experiencing a cold feeling in his body with feeling very weak and having lots of thoughts going through his mind; and he was having some excessive worrying. In addition, Plaintiff was having some depressive thoughts on and off, with feelings of sadness with crying episodes. The diagnoses were generalized anxiety disorder and rule out early depression, with a global assessment of functioning [hereinafter "GAF"] of 60 (Tr. 234-237). Plaintiff followed-up with mental health on June 18, 2004, at which time he was diagnosed with generalized anxiety disorder, depressive disorder NOS, and major depressive disorder, with a GAF o 59 (Tr. 231-233). On March 3, 2005, PA-C Frantzen obtained MRI of Plaintiff's lumbar spine which revealed mild narrowing of the L4-5 disc space associated with mild, broad-based bulging of the disc; mild narrowing of the posterior aspect of the disc space at L5-S1 with mild, broad-based disc herniation, associated with some displacement of the intraspinal-descending S1 on the right; and compression of the neural fat in the caudal aspect of the neural foramen at L5-S1 on the right (Tr. 296). On July 11, 2005, cervical spine x-rays showed loss of the cervical lordosis, suggestive of muscle spasm (Tr. 204).

On September 15, 2005, Plaintiff underwent limited consultative exam by Dr. Karl W. Konrad. Dr. Konrad's exam consisted only of height, weight, and range of motion testing of the lumbar spine. Plaintiff allowed five degrees of lateral bending to either side with five degrees of backward extension and 40 degrees of forward flexion. No diagnosis or opinion regarding limitations was offered (Tr. 313).

On October 3, 2005, a non-examining state agency physician opined Plaintiff can lift and/or carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; can sit (with normal breaks) for a total of about six hours in an eight-hour workday; can only occasionally climb, balance, stoop, kneel, crouch, and/or crawl; and must avoid concentrated exposure to vibration (Tr. 322-329).

On October 10, 2005, a non-examining state agency physician opined Plaintiff is mildly limited by restriction of activities of daily living, by difficulties in maintaining social functioning, and by difficulties in maintaining concentration, persistence, or pace (Tr. 330-343).

Plaintiff continued treatment at Mountain Home VAMC from March 29, 2006 through October 4, 2006, during which time he was suffering chronic lumbosacral pain radiating into the lower extremities, intermittent posterior right thigh pain, whole left arm numbness, decreased range of motion, bulging discs in the cervical spine, degenerative disc disease of the cervical and lumbar spine, stenosis, and neuropathy (Tr. 344-366). Plaintiff underwent MRI of the cervical spine on April 17, 2006, upon orders by PA-C Frantzen due to worsening cervical pain, left upper extremity radiculopathy, weakness, and neuropathy. The spine was kyphotic; there was mild narrowing of the C5-6 disc space; there was a mild broad-based bulge of the discs at C4-5, with compression of the anterior aspect of the thecal sac; and there was minimal posterior bulging of the discs

noted at C6-7 (Tr. 365).[1]

On March 1, 2007, PA-C Frantzen opined Plaintiff can lift/carry a maximum of 20 pounds; can stand/walk for a total of three hours in an eight-hour day, 30 minutes without interruption; can sit for a total of four hours in an eight-hour day, 20-25 minutes without interruption; can never stoop; can occasionally to never kneel, crouch, and/or crawl; can occasionally climb only stairs and/or balance; is limited in his ability to reach, handle, feel (with the left arm/hand), and push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, temperature extremes, and vibration. To support his assessment, PA-C Frantzen noted Plaintiff's degenerative disc disease with disc herniation, right lower extremity myelopathy, MRIs of the cervical and lumbar spines, and cervical and LS spine disc disease (Tr. 371-373).

[Doc. 9, pgs. 2-5].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease and cervical pain (Tr. 17). He found no mental impairment.[2] Based upon the record, the ALJ found that the plaintiff had the residual functional capacity to lift objects weighting up to 20 pounds, to sit for six hours out of an eight hour day with normal breaks, to stand and walk for five hours out of an eight hour day, but not continuously for more than one hour at a time. He found that the plaintiff "must be able to change posturals frequently." (Tr. 18).

The ALJ utilized a Vocational Expert ["VE"] at the administrative hearing. The ALJ asked the VE, Dr. Norman Hankins, to assume the plaintiffs age, education and vocational

---

[1] There is no medical assessment from a treating physician at the VA. However, on May 10, 2006, Dr. Arthur W. Belanger co-signed a report signed by Physician Assistant Eleanor B. Snow stating that "Veteran able to do everything as long as he can shift positions frequently. Limits bending and lifting." (Tr. 354).

[2] Plaintiff does not argue in his brief that he suffers from a severe mental impairment. Any contrary argument hereafter is waived. Indeed, it would take very significant evidence to show that the plaintiff, a full-time college student during the entire relevant period who has earned one undergraduate degree, and is actively pursuing another, could have a severe mental impairment.

4

history. He then asked him to assume that the plaintiff is "restricted to the demands of light work activity, which is work that requires lifting 20 pounds occasionally and 10 pounds frequently, and further assume the claimant would need a job that would allow frequent postural changes." When asked if there were jobs such a person could perform, the VE identified jobs as a security guard, cashiers, telemarketers, credit authorizers, checkers and clerks, general office clerks, receptionists, information clerks, dispatchers and interviewers. He further testified that there were 100,000 such jobs in Tennessee and 10 million in the national economy. (Tr. 516, 17).

Based upon this testimony, the ALJ found that the plaintiff was "not disabled." (Tr. 26).

There are various issues of concern in this adjudication. First, the ALJ's findings regarding the plaintiff's residual functional capacity, both in his hearing decision and in his hypothetical question to the VE, are less restrictive than either of the two medical assessments in the record. Second, the residual functional capacity set forth in the hearing decision does not match that contained in the ALJ's question posed to the VE.

Plaintiff asserts that there are only two medical assessments of the plaintiff's physical capabilities in the record, that of Dr. Saul Juliao, a non-examining state agency physician (Tr. 322-39), and that of Physician's Assistant Thomas Frantzen (Tr. 372-73).[3] As stated above- Dr. Juliao found that plaintiff could meet the lifting requirements of light work, as well as those regarding standing and walking. However, he found several postural limitations and

---

[3] The ALJ had a "limited exam" performed by Dr. Karl W. Konrad (Tr. 313), which resulted in no opinions regarding plaintiff's exertional or postural capabilities.

5

a necessity to avoid concentrated exposure to vibration which were not incorporated by the ALJ into either of his statements on RFC. Physician Assistant Frantzen, the only examining source to render a medical assessment, found far more significant limitations on standing and walking than did the ALJ, and also found several postural and environmental restrictions.

The Court is unsure of why no examination was requested to determine the plaintiff's physical capabilities. However, except for the statement by Physician Assistant Snow and Dr. Belanger at the VA (Tr. 354) the plaintiff was "able to do everything as long as he can shift positions frequently..." with "limits bending and lifting...," there simply is no other evaluation from a medical source which opines that the plaintiff has the RFC found by the ALJ in either the hearing decision RFC or the question posed to the VE. The statement of Snow and Belanger, cryptic and certainly not as part of a disability determination, does not bridge the gap between the medical assessments and the findings of the ALJ.

Also, it is more than troublesome that the ALJ stated in his hearing decision that the plaintiff had restrictions on standing and walking that were not included in the question posed to the VE. The Commissioner argues that the portion of that question which assumed the ability to make frequent postural changes "encompasses the restriction that Plaintiff not stand or walk continuously for more than one hour." [Doc. 13, pg. 12]. If that be so, then there was no need for the ALJ in the hearing decision to *add* to his restrictions on standing and walking that "[t]he claimant must be able to change posturals frequently." (Tr. 18). Finally, the ALJ was not at liberty to mention none of the postural restrictions imposed by the medical assessments in the absence of other medical proof that they did not exist.

In the opinion of the Magistrate Judge, there is not substantial evidence in the record

6

as it now stands to support either of the ALJ's pronouncements on the plaintiff's capabilities and restrictions. The case should be remanded to the Commissioner for a consultative examination regarding the plaintiff's physical capabilities, and further administrative proceedings consistent with this report and recommendation. It is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be GRANTED as to the suggestion of a remand, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be DENIED.[4]

Respectfully submitted:


 s/ Dennis H. Inman
United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).